UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GURINDER SINGH (A-Number: 221-223-261),

Petitioner,

v.

TONYA ANDREWS, *et al.*,

Respondents.

Case No. 1:26-cv-7659-DC-JDP

FINDINGS AND RECOMMENDATIONS

In September 2024, petitioner entered the United States without inspection and was quickly arrested by immigration authorities who released him into the United States approximately a month later. On September 20, 2026, ICE detained petitioner when he went to their office for a check-in. Petitioner, through counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his detention without a bond hearing violates due process. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner entered the United States without permission on September 10, 2024, and was arrested by immigration authorities. ECF No. 7 at 5. On October 11, 2024, immigration authorities issued him a notice to appear in immigration court and released him into the United

States. *Id.* On April 29, 2025, petitioner filed an application for asylum.[1] ECF No. 1-2 at 3. On November 10, 2025, immigration authorities approved petitioner's employment authorization, which is valid until November 2, 2030. ECF No. 1-2 at 8-9; ECF No. 7 at 5. Until his recent re-detention by ICE, petitioner's immigration court hearing was scheduled for September 11, 2029. ECF No. 7 at 5.

Starting October 23, 2024, petitioner participated in ICE's alternatives to detention ("ATD") program. ECF No. 1-2 at 10-11. In compliance with that program, petitioner checked in at the ICE office on September 20, 2026. ECF No. 7 at 4. Petitioner's attorney went with him to the check-in but was excluded by ICE officers. ECF No. 1 at 5. ICE officers re-detained petitioner at that check-in, allegedly for five reporting violations dating from October 24, 2024, to April 7, 2026. ECF No. 7 at 2-3.

Petitioner indicates that he was told by ICE during his re-detention that he violated the conditions of his release in 2024 and in April 2026, but he disputes that claim. ECF No. 1 at 6. Petitioner alleges that he has scrupulously followed his conditions of release. *Id.* at 5. Petitioner wore a GPS ankle monitor starting on October 23, 2024, attended scheduled ICE check-ins, submitted to home visits by supervision personnel, and completed check-ins through the ICE mobile application. *Id.* Petitioner asserts that he "never missed a report, never absconded, and never violated a condition of release." *Id.* Petitioner has no criminal arrests or convictions. ECF No. 7 at 5. There is no indication that ICE issued an arrest warrant when it detained petitioner. *See id.* ICE has detained petitioner since September 20, 2026, without a bond hearing. ECF No. 1 at 2.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."

[1] The Form I-213 completed by ICE at the time of petitioner's re-detention states that petitioner has no pending petitions or applications. *See* ECF No. 7 at 5.

*Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner argues that his re-detention without a pre-deprivation hearing violates due process. ECF No. 1 at 9. Respondents state that ICE detained petitioner under 8 U.S.C. § 1225(b)(2)(A), which allows for mandatory detention without a bond hearing. ECF No. 7. Respondents recognize that the Court of Appeals, in *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026), has rejected this position. *Id.*

In *Rodriguez Vazquez*, the Court of Appeals held that 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b), applies to noncitizens who entered without inspection and are detained by ICE in the interior of the United States. *Rodriguez Vazquez*, 183 F.4th at 1165.[2] "Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an [immigration judge] at any time before a removal order becomes final." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

Petitioner was released into the United States in October 2024 by immigration authorities. Respondents concede that petitioner's detention falls under *Rodriguez Vazquez.* ECF No. 7. In other words, while the government continues to argue that section 1225(b)(2)(A) applies to petitioner, it recognizes that binding authority does not support this position. Accordingly, I find that petitioner's detention should have been governed by section 1226 and not, as respondents advance, by section 1225. Other than citing the statutory ground for detention, respondents fail to

---

[2] Because the mandate has yet to issue, the court takes advisory notice of this ruling. *See* Fed. R. App. Pro. 41. This holding accords with five other Courts of Appeals. *See Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Mia.*, 175 F.4th 1258, 1262 (11th Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1246 (10th Cir. 2026); *Cirrus Rojas v. Olson*, 183 F.4th 909, 915 (7th Cir. 2026).

address petitioner's due process claim. ECF No. 7.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

Courts in this Circuit have repeatedly found that noncitizens released from immigration custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, 818 F. Supp. 3d 1113, 1120 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Petitioner is no different. Immigration authorities released him into the United States in October 2024. ECF No. 1 at 5; ECF No. 7 at 4. Petitioner lived in the United States for almost two years prior to his re-detention by ICE on September 20, 2026. ECF No. 7 at 4.

Petitioner's initial release and time out of custody have created a substantial constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests); *see also Capote v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3168-JLT-EPG, 2026 WL 1415306, *2 (E.D. Cal. May 20, 2026) (granting writ of habeas corpus where petitioner had been previously paroled into the United States pursuant to the Cuban Humanitarian Parole program).

Accordingly, I must next determine what procedural protections the government should have afforded petitioner before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context). The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner acquired a private interest in continued release during almost two years of release in the United States. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Second, a pre-deprivation bond hearing in immigration court would have addressed that interest, and the risk of erroneous deprivation without a bond hearing is high. Prior to releasing petitioner into the United States, respondents necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-1471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention."

*Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-0801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondents offer no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more generally, they give the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id*. On the contrary, the fact that the government maintains that petitioner is subject to mandatory detention without a bond hearing indicates that it has not made sufficient efforts to prevent an erroneous deprivation of his liberty. *See* ECF No. 7.

Here, ICE officers allege without detail or documentary support that petitioner has violated the ATD program five times. ECF No. 7 at 5. Petitioner disagrees. ECF No. 1 at 6. To protect against the erroneous deprivation of his liberty, petitioner brought his attorney with him to the check-in, but ICE excluded counsel from that meeting. *Id.* Further, ICE re-detained petitioner without providing him written notice of the reason for his re-detention. *Id*. In these circumstances, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). Indeed, respondents have provided no information about the additional burden that would fall on it as a result of being required to provide a bond hearing. *See* ECF No. 7. "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner seeks immediate release. ECF No. 1 at 14. Respondents state that petitioner is "entitled to seek a custody redetermination hearing before an

immigration judge."[3] ECF No. 7.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id.* at 128 (cleaned up). Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

Moreover, where the government has erroneously applied section 1225(b) to a petitioner, courts have ordered immediate release. *See, e.g.*, *Morillo v. Albarran*, No. 1:25-cv-1533-DJC-AC, 2025 WL 3190899, at *5 (E.D. Cal. Nov. 15, 2025); *Cortes Cortes v. Warden of the Golden State Annex Det. Facility*, No. 1:26-cv-6609-DC-JDP, 2026 WL 2494984, at * 3 (E.D. Cal. Aug. 25, 2026); *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-5661-DAD-SCR, 2026 WL 2294963 (E.D. Cal. Aug. 10, 2026). In *Feng v. Lyons*, the court held that a delay "in providing the statutorily mandated bond hearing violates [a petitioner's] due process rights" and found that the "[p]rovision of a bond hearing after months of detention without the

---

[3] In *Matter of Yajure Hurtado*, the BIA held that immigration judges lack jurisdiction to hear a request for bond where the noncitizen is detained under section 1225(b)(2)(A). 29 I. & N. Dec. 216, 228-29 (BIA 2025). As noted, respondents assert that petitioner is detained under this section. ECF No. 7 at 1. Respondents offer no assurances that, if petitioner requested a bond hearing, an immigration judge would have the authority to provide him one. *See id.*

opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right." No. 1:26-cv-0235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (citations omitted).

Here, petitioner was at liberty in the United States for almost two years prior to being re-detained by ICE at his scheduled check-in. ECF No. 1 at 5-6; ECF No. 7 at 4. Although ICE officers claim that there were five violations of ATD conditions, respondents provide no details or documentary support regarding those alleged violations.[4] ECF No. 7 at 4-5. Petitioner strongly disputes the claim of any violations and squarely raised that issue in his petition. ECF No. 1 at 6. Petitioner has never been arrested or convicted of a crime. ECF No. 7 at 5. Moreover, respondents do not argue that petitioner is a danger or a flight risk. *See* ECF No. 7.

The asserted ATD violations occurred between October 24, 2024 (the day after petitioner was placed on electronic monitoring) and April 2026. *Id.* at 5. ICE called petitioner in for a check-in at the ICE office over five months after the last alleged ATD violation, undermining any rationale for the "necessity of quick action" by ICE such that petitioner could not have been provided a pre-deprivation hearing. *See Zinermon*, 494 U.S. at 128. Petitioner responded to that check-in with his lawyer and was prepared to address any issues at that time, but his lawyer was excluded from the meeting. ECF No. 1 at 6.

Under these circumstances, I find that the "typical remedy" of release, *see Munaf*, 553 U.S. at 693, is appropriate because the government has not provided a lawful justification for re-detaining petitioner without a pre-deprivation hearing. Petitioner's due process rights have been violated such that the provision of a bond hearing is constitutionally insufficient. *See Feng*, 2026 WL 472635, at *1. Accordingly, the appropriate relief is immediate release from custody, thereby returning him to the "status quo ante." *See Cardin Alvarez*, 2025 WL 2898389, at *21.

[4] On September 21, 2026, the court ordered respondents to "attach any documents necessary for resolving the issues presented in the petition." ECF No. 3. Respondents have not provided documents necessary to resolve the issue of whether petitioner violated any terms of his ATD.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondents be ordered to immediately release petitioner (A-Number: 221-223-261) from their custody on the same conditions, if any, as his prior release. Respondents shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve Golden State Annex Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within three days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: October 9, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE